UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES HALL, et al.,

    Plaintiffs,

v.

COUNTY OF WHATCOM, et al.,

    Defendants.

No. C09-1545RSL

ORDER GRANTING IN PART AND DENYING IN PART THE FERNDALE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## INTRODUCTION

On October 29, 2009, plaintiffs James Hall, Kurt Hall, and Mark Hall asserted claims against the City of Ferndale and its Officer, Chris Johnston (hereinafter, "defendants" or "the Ferndale defendants"), for violation of plaintiffs' civil rights, assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress, and negligence. Dkt. # 1. This matter comes before the Court on defendants' motions for summary judgment regarding most of the claims asserted against them in the above-captioned matter. Dkt. # 68-70.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 1

of fact could find other than for the moving party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Celotex Corp., 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150-51 (2000). However, the production of "a scintilla of evidence in support of the non-moving party's position" is not sufficient. Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Hyperbole, supposition, and conclusory accusations cannot take the place of evidence. CarePartners LLC v. Lashway, 2010 WL 1141450 (W.D. Wash. 2010) (citing British Airways Bd. v Boeing Co., 585 F.2d 946, 955 (9th Cir. 1978)). Nor will the production of a stack of uncited documents in opposition to or in support of a motion for summary judgment satisfy a party's burden. The Court need not, and will not, "scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996); see also, White v. McDonnell-Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").

Having considered the memoranda, declarations, and exhibits[1] submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

---

[1] The parties have provided deposition transcripts and/or excerpts of deposition transcripts that do not include a signed reporter's certification. Although these exhibits could be stricken for lack of authentication and foundation (Orr v. Bank of America, 285 F.3d 764, 773-774 (9th Cir. 2002)), neither party has objected and the Court has considered the documents on the assumption that the parties will be able to provide the proper authentication and foundation at trial.

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 2

**FACTS**

While recognizing that the facts must be considered in the light most favorable to plaintiffs, the Court notes that there are material discrepancies among the three plaintiffs' versions of events, and sometimes even within a single plaintiff's version of events. The Court has considered each plaintiff's testimony regarding the events of July 30, 2008, when evaluating the evidence related to that plaintiff's claims.

On July 30, 2008, plaintiff James Hall was driving a truck home from church with his brother, plaintiff Kurt Hall, and father, plaintiff Mark Hall, as passengers. When a car behind them flashed its lights, plaintiffs thought they either knew the driver or that the driver might be in need of assistance. James Hall pulled the truck over and saw the driver get out of the car and walk toward the truck. Although the driver was an off-duty sheriff's deputy, he was not in uniform and did not otherwise indicate that he was a law enforcement officer. James and Kurt Hall got out of the truck and walked back towards the deputy, asking if anything was wrong. The Hall brothers had their hands in their pockets as they approached. Without warning or provocation, the deputy struck James Hall in the throat with an open palm and poked Kurt in the eye. When Mark Hall got out of the truck, James Hall told him that the deputy had struck him in the throat. Amidst much shouting and arguing, the deputy identified himself as an off-duty law enforcement officer and showed his badge. James, Kurt, and Mark Hall were yelling at the deputy as a result of the strike to James Hall's throat. The deputy's wife, who was a passenger in his car, called 911 and reported that there were three guys yelling at her husband and that they were the aggressors.

Two City of Ferndale police officers, Officer Chris Johnston and Sergeant VanderYacht, arrived in response to the 911 call. Sergeant VanderYacht is not a defendant in this litigation. The Ferndale officers first approached the off-duty deputy who was talking to other officers who had arrived at the scene. Both Officer Johnston and Sergeant VanderYacht then approached James Hall, who told Officer Johnston that the other driver had punched him

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 3

in the throat. Officer Johnston asked James Hall to move back, stated that he would have to search James Hall, and proceeded to place him in handcuffs. Officer Johnston frisked the lower part of James Hall's body for weapons: he did not search his upper body because James Hall "was wearing a dress-type shirt that was tucked in [and Officer Johnston] didn't have reason to believe there would be any weapons in the upper part of his body." Dkt. # 102-2, Ex. K at 54:9-19. Officer Johnston's purpose was to separate the parties and secure the scene. He told the Halls that they were not free to leave. James, Kurt, and Mark Hall believed that they were not free to leave after the Ferndale officers arrived at the scene.

Mark Hall objected to the way his son was being treated. Sergeant VanderYacht told Mark Hall to back up, pushed him in his left shoulder, and threatened to push him in the ditch if he did not "shut up." Sergeant VanderYacht held James Hall's arm, and Officer Johnston conducted the frisk, during which he struck James Hall in the testicles with an open palm, then grabbed and squeezed them. James Hall's knees buckled after both impacts, and Sergeant VanderYacht held the handcuffs aloft before pulling James Hall up by his arms. While James Hall was still in handcuffs, Officer Johnston used some type of "pain hold" on him and forced James Hall to his knees.

## DISCUSSION

**A. 42 U.S.C. § 1983**

To establish a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) the action occurred under color of state law and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. Parratt v. Taylor, 451 U.S. 527, 535 (1981). The Ferndale defendants do not dispute that the officers were acting under color of state law, but argue that their conduct did not violate the Fourth Amendment. James Hall argues that the Ferndale defendants violated (1) his right to be free from unreasonable searches and seizures when the officers frisked and handcuffed him and (2) his right to be free from excessive force when Officer Johnston struck his testicles, used tight handcuffs, and forced James Hall to his

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 4

knees.  Kurt and Mark Hall argue that the Ferndale defendants unlawfully seized them without probable cause in violation of the Fourth Amendment and used excessive force on Mark Hall by pushing his left shoulder.[2]

**1. Unlawful Search and Seizure – James Hall**

The parties disagree regarding the appropriate characterization of Officer Johnston's actions.  Plaintiffs argue that what occurred was an arrest and that the Ferndale defendants did not have probable cause to believe that any of the plaintiffs had committed or was committing an offense.  Gerstein v. Pugh, 420 U.S. 103, 111 (1975).  The Ferndale defendants, on the other hand, maintain that it was an investigatory stop for which only an articulable suspicion of criminal activity is necessary.  Terry v. Ohio, 392 U.S. 1, 9 (1968).

In Terry, the Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."  Id., at 22.  "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures."  U.S. v. Sharpe, 470 U.S. 675 (1985) (emphasis in original).  An investigative stop is reasonable if (a) the detention was justified at its inception and (b) the length and manner of the detention were reasonably related to the circumstances which justified the detention in the first place.  Terry, 392 U.S. at 20.[3]

When Officer Johnston arrived at the scene in response to a 911 call, he knew that there had been some sort of road-rage incident and that three adult males were yelling at an

---

[2] Plaintiffs have failed to present any evidence or argument in support of the myriad other constitutional claims asserted in their complaint, including Kurt Hall's excessive force claim and the alleged violations of the due process clause, the equal protection clause, and the Eighth Amendment.

[3] There is no bright line rule for determining when an investigatory stop becomes an arrest that must be supported by probable cause.  Gallegos v. City of Los Angeles, 308 F.3d 987, 991 (9th Cir. 2002).  Rather, whether a police detention is an arrest or an investigatory stop is a fact-specific inquiry, guided by the general Fourth Amendment's reasonableness requirement.  Id.  An investigatory stop does not automatically become an arrest simply because the police use handcuffs or some degree of force to detain the subject.  Allen v. City of Los Angeles, 66 F.3d 1052, 1056-58 (9th Cir. 1995).

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 5

off-duty deputy. Officer Johnston observed James Hall and the deputy in a heated discussion: James Hall appeared to be angry and was yelling at the other driver. In such circumstances, it was appropriate to approach James Hall, separate the antagonists, and maintain the status quo until more information could be obtained. Adams v. Williams, 407 U.S. 143, 146 (1972). While it is clear that, taking the evidence in the light most favorable to plaintiffs, Officer Johnston chose to detain the victim in the altercation rather than the aggressor, perfect knowledge was not available at the time, and the Officer was not constitutionally obliged to accept James Hall's version of events as true.

Plaintiffs argue that the length of time in which plaintiffs were detained at the scene, the use of handcuffs, and the decision to search James Hall[4] were constitutionally unreasonable under the Fourth Amendment. The Court disagrees. Officer Johnston's purposes in detaining James Hall and his passengers were to separate the antagonists and secure the scene until the investigating officers responded to the road rage incident. At oral argument, the parties agreed that the Ferndale officers' involvement at the scene lasted approximately 15-20 minutes. That time includes their initial contact with the antagonists, the separation of the parties, handcuffing and frisking James Hall, and turning the scene over to the investigating officers upon their arrival. There is no indication that the Ferndale officers acted less than diligently or that they unnecessarily prolonged plaintiffs' detention.

With regards to the use of handcuffs and the decision to search James Hall, the officers arrived at the scene to find three men yelling at the off-duty deputy. In addition to separating the parties, Officer Johnston could reasonably conclude that handcuffing the most agitated of the men and ensuring that he was not armed would lessen the chance that the two officers would lose control of the situation. Considering the law enforcement purposes to be served by the detention as well as the time reasonably needed to effectuate those purposes, the

---

[4] Defendants concede that, taking the evidence in the light most favorable to plaintiffs, the manner in which the search was conducted could be the basis for an excessive force claim and therefore do not seek dismissal of that portion of James Hall's Fourth Amendment claim.

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 6

Court finds that the investigative detention and search at issue here were reasonable.

**2. Unlawful Seizure – Kurt and Mark Hall**

The Court has already determined that the 15-20 minute detention of the Halls was constitutionally permissible given the circumstances with which the officers were presented and the need to investigate the reported road rage incident.

**3. Excessive Force – James Hall**

Defendants are not seeking dismissal of the excessive force and state law assault claims related to the alleged strikes to the testicles. They do, however, seek a summary determination that the use of handcuffs and a "pain hold" were lawful. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989). The jury should be permitted to consider all of the force brought to bear against James Hall so that the balance is appropriately weighted.

4. **Excessive Force – Mark Hall**

Mark Hall has not presented evidence from which a reasonable jury could conclude that he was subject to excessive force at the hands of the Ferndale defendants.

**5. Qualified Immunity**

Whether Officer Johnston is entitled to qualified immunity depends on (1) whether the facts that the plaintiffs have alleged or shown make out a constitutional violation and, (2) if so, whether the constitutional right at issue was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).[5] Having determined that a violation of James Hall's Fourth Amendment rights could be established on a favorable view of plaintiffs' evidence, the Court must determine whether the right was clearly established. It

---

[5] The Supreme Court modified Saucier in Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009). Under Pearson, the decisional sequence is no longer mandatory. Here, the Court concludes that the Saucier analysis, although no longer required, is appropriate.

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 7

was. Graham, 490 U.S. at 395; P.B. v. Koch, 96 F.3d 1298, 1303-04 n.4 (9th Cir. 1996). Qualified immunity is inappropriate because a reasonable officer would have known that force against a compliant, restrained subject was not necessary. Saucier, 533 U.S. at 202.

### 6. Municipal Liability

Plaintiffs seek to hold the City of Ferndale liable for the excessive force allegedly used against James Hall. A local government may be held liable under 42 U.S.C. § 1983 in the following circumstances: (1) "when implementation of its official policies or established customs inflicts the constitutional injury"; (2) "for acts of 'omission,' when such omissions amount to the local government's own official policy[,]" such as for failure to adequately train or supervise employees; or (3) "when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 708 (1978)) (internal quotations omitted). Plaintiffs maintain that the City of Ferndale failed to adequately supervise Officer Johnston, resulting in a pattern of misconduct. To succeed on this claim, they must show that the government's omission amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact. City of Canton v. Harris, 489 U.S. 378, 389 (1989); Clouthier, 591 F.3d at 1249.

Plaintiffs argue that Officer Johnston's admission that he had four citizens' complaints against him establishes a pattern of unconstitutional conduct. It does not. Plaintiffs offer no evidence regarding the nature of the complaints, and it appears that they focus on Officer Johnston's demeanor rather than any interest protected by the Fourth Amendment. The failure to supervise claim is based solely on Sergeant VanderYacht's alleged failure to control Officer Johnston during the search of James Hall. Even if plaintiffs are able to show that Sergeant VanderYacht should have intervened, there is no indication that he is a policymaker

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 8

for purposes of Monell or that this isolated incident was caused by an existing, unconstitutional municipal policy. Oklahoma City v. Tuttle, 471 U.S. 808, 821-23 (1985). The Court finds that plaintiffs have not produced sufficient evidence to create a triable issue of fact as to the liability of the City of Ferndale.

**B. Assault and Battery**

"An assault is an attempt, with unlawful force, to inflict bodily injuries upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented." Brower v. Ackerley, 88 Wash. App. 87, 92 (1991). An actor is subject to liability for assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Id. at 93 (citing Restatement (Second) Torts § 21). A battery is the intentional infliction of harmful bodily contact with plaintiff. Morinaga v. Vue, 85 Wash. App. 822, 834 (1997).

**1. James Hall**

The Court has already found that triable issues of fact exist with respect to James Hall's claim for excessive use of force against Officer Johnston. If plaintiff is able to show that Officer Johnston's use of force was unreasonable and therefore unlawful, he may be able to establish his assault and battery claim. See Boyles v. City of Kennewick, 62 Wn. App. 174, 176 (1991) ("Generally, a police officer making an arrest is justified in using sufficient force to subdue a prisoner, however he becomes a tortfeasor and is liable as such *for assault and battery* if unnecessary violence or excessive force is used in accomplishing the arrest.") (emphasis in original).

**2. Kurt and Mark Hall**

The Court has already found that Officer Johnston's interactions with Kurt and Mark Hall do not constitute excessive force. Even if the Court assumes that contact with these plaintiffs was initiated by Sergeant VanderYacht, there is no evidence of injury or, in Kurt

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 9

Hall's case, offensive touching. Given the need to ensure his own and Officer Johnston's safety during the search of James Hall, Sergeant VanderYacht was privileged to use a minimal level of force to keep Mark Hall away from Officer Johnston. Under Washington law, the contact was therefore lawful and the Ferndale defendants are entitled to state law qualified immunity. <u>McKinney v. City of Tukwila</u>, 103 Wn. App. 391, 408-09 (2000).

**C. Intentional Infliction of Emotional Distress (Outrage)**

The tort of outrage requires (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress. <u>Kloepfel v. Bokor</u>, 149 Wn. 2d 192, 195 (2003). Mere indignities, threats, annoyances, petty oppressions, or other trivialities do not give rise to the tort of outrage: the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Birklid v. Boeing Co.</u>, 127 Wn.2d 853, 867 (1995) (quoting <u>Grimsby v. Samson</u>, 85 Wn.2d 52, 59 (1975)). The Court finds that Officer Johnston's responses to ambiguous circumstances, while potentially unlawful as to James Hall, were not extreme and outrageous.

**D. Negligence Claim**

Plaintiffs concede that Officer Johnston was not negligent, but allege that the City of Ferndale was negligent in its hiring, supervising, and failing to discipline Officer Johnston and Sergeant VanderYacht. Plaintiffs did not, however, allege a claim for negligent hiring, supervising, and failing to discipline in their complaint. Even if the Court were to consider such a claim, the duty of a city to hire, train, retain and supervise its officers is owed to the public at large, not to a plaintiff individually. <u>See</u> <u>Babcock v. Mason County Fire Dist. No. 6</u>, 144 Wn. 2d 774, 784-85 (2001). Plaintiffs cannot establish that the City of Ferndale owed them a legal duty for purposes of their negligence claim.

**E. False Arrest and False Imprisonment**

"False arrest and false imprisonment can be distinguished by the manner in which

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 10

each cause of action arises." <u>Bender v. City of Seattle</u>, 99 Wn. 2d 582, 590 (1983). "False arrest may be committed only by one who has legal authority to arrest or who had pretended legal authority to arrest." <u>Id.</u> In contrast, "false imprisonment may exist entirely apart from any purported process of law enforcement, as by private individuals acting on their own initiative for their own private purposes without any pretense of legal authority." <u>Id.</u> The Court has already determined that plaintiffs were not arrested. Nor have plaintiffs shown that Officer Johnston or the City of Ferndale were acting without legal authority or falsely imprisoned plaintiffs.

**F. Injunctive Relief**

Defendants seek dismissal of plaintiffs' claim for court-supervised training and other forms of injunctive relief. Plaintiffs have not responded. Because there is a plain, complete, speedy, and adequate legal remedy for James Hall's excessive force claim, the request for injunctive relief is stricken.

## CONCLUSION

For all the foregoing reasons, the Court GRANTS in part and DENIES in part the Ferndale defendants' motion for summary judgment on the claims of James Hall. Dkt. # 68. James Hall's claims against Officer Johnston for excessive force and assault and battery, including the use of a compliance hold, may proceed to trial. All other claims asserted by James Hall are DISMISSED. The Court GRANTS the Ferndale defendants' motions for summary judgment regarding the claims of Mark Hall and Kurt Hall in their entirety. Dkt. # 69 and # 70.

Dated this 13th day of December, 2011.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING THE FERNDALE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT- 11